IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 08 CR 153 |
| v. | Judge Rebecca R. Pallmeyer |
| PAUL PORTER | |

**DEFENDANT PAUL PORTER'S RESPONSE TO THE
GOVERNMENT'S MOTION TO VACATE THE RELEASE ORDER**

Defendant PAUL PORTER, by the Federal Defender Program and its attorney ALISON SIEGLER, respectfully submits this response to the government's motion to vacate the bond order, and submits that there are conditions of release that will reasonably assure Mr. Porter's appearance and the safety of the community. In support of this motion, Mr. Porter states as follows:

**I.　BACKGROUND**

On March 6, 2008, the Honorable Nan R. Nolan ordered Paul Porter released on an unsecured $4500 bond cosigned by LaDalle Mitchell (the mother of his child) on the condition that he enter the Gateway Foundation's inpatient treatment facility. Gateway had agreed to pick Mr. Porter up from the MCC and transport him directly to the facility. Judge Nolan made numerous factual findings regarding the factors addressed in 18 U.S.C. § 3142(g). She also stated that our pretrial facilities do not provide adequate mental health and drug treatment, a fact that is relevant to Mr. Porter's physical and mental condition and his drug abuse history under § 3142(g)(3)(A). Judge Nolan spoke about her positive experiences with the Gateway program and explained that she had released many people accused of bank robbery to the program and had never had a problem.

Judge Nolan concluded that the conditions of release would reasonably assure Mr. Porter's appearance in court. In support of this conclusion, she cited the fact that Mr. Porter is a

1

35-year-old Chicago native with family ties to this community who has no funds or resources to leave this area. Specifically, Mr. Porter's parents and sister live in the Chicago area, as does LaDalle Mitchell, who has appeared at every court appearance, cosigned the bond, and agreed to be Mr. Porter's third-party custodian. Judge Nolan accurately noted that Mr. Porter had not been convicted of any crime between 2006 and 2008. Although the government pointed out that Mr. Porter spent time in the Department of Corrections in 2006, it is clear that Mr. Porter was released in September 2006 and successfully completed his year-long parole term.

Judge Nolan also determined that the government had not proved by clear and convincing evidence that there were *no conditions* of release that would reasonably assure the safety of the community. She determined, in the exercise of her discretion and in light of her experience with the Gateway program, that placement in Gateway would reasonably assure the safety of the community.

## II.     LEGAL STANDARD

As the Supreme Court held in *United States v. Salerno*, 481 US 739, 755 (1987), "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." This presumption of release is encapsulated in the Bail Reform Act, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, 18 U.S.C. § 3142(b), except in certain narrow circumstances. Even if the Court determines under 18 U.S.C. § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further conditions," that will "reasonably assure," not definitively guarantee, the defendant's appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1). There is no presumption of detention in a bank robbery case. *See* 18 U.S.C. § 3142(e). To detain a defendant, the government must prove by a preponderance of the evidence that there is no combination of conditions that will reasonably assure a defendant's appearance, or must prove by clear and convincing evidence that there is no combination of conditions that will reasonably assure the safety of the community. 18 U.S.C. § 3142(e), (f).

**III.    Placement at Gateway Will Reasonably Assure Paul Porter's Appearance in Court and the Safety of the Community.**

Mr. Porter has undergone inpatient treatment at the Gateway Foundation in the past, and responded very well to that treatment. In retrospect, it appears that he was released into the community too soon, and would have benefitted from remaining in a structured treatment setting. Gateway has now accepted Mr. Porter back into the inpatient treatment program, and is willing to pick him up from the MCC and transport him to Gateway as soon as bed space becomes available.

Undersigned counsel has spoken at length with Jacqueline Seaton, the Clinical Supervisor of Gateway's L-Star Program. The L-Star Program is a Mental Illness and Substance Abuse (MISA) program that treats people like Mr. Porter who suffer from a dual diagnosis. Ms. Seaton states that Mr. Porter did well at Gateway, remained drug-free during his stay, and was fully compliant with his medications. The attached reports from Gateway demonstrate how well Mr. Porter adjusted to treatment. *See* Attachment A. Ms. Seaton would like Mr. Porter to return to Gateway, and she has no doubt that he will be compliant with treatment. She also explains that if Mr. Porter again completes the inpatient portion of the program, he may be placed into one of Gateway's recovery homes, which are structured living and treatment facilities with 24-hour staff where Mr. Porter could live for an extended period of time.

Undersigned counsel has also spoken with Peter Harding, Intake Coordinator for Thresholds' Rowan Trees branch, located at 500 W. Engleside. (Thresholds is one of the country's largest non-profit providers of mental health services.) Mr. Harding has explained that Mr. Porter has lived at Thresholds for over a year in the past and is welcome to live there again in the future.

In addition, Mr. Porter suffers from a medical condition that can best be treated outside of the Metropolitan Correctional Center. In 1999, he was diagnosed with full-blown thyroid cancer and underwent surgery to remove his thyroid gland. The cancer has recurred multiple times since then. He recently had an abnormal test which indicated that the cancer may have recurred again.

He had an appointment with an endocrinologist scheduled for March 3, 2008, which he was unable to attend as a result of his arrest and incarceration. He has lost over 10 pounds in the less than three weeks he has been incarcerated, and the MCC has not scheduled him for an appointment with an endocrinologist despite his repeated entreaties.

While the Bail Reform Act requires that the Court impose "the least restrictive further condition" that will assure appearance and safety, placement in "a specified institution" for the purposes of undergoing "medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency" is one of the strictest bond conditions available. 18 U.S.C. 3142(B)(x) (listing conditions in order, from least restrictive to most restrictive, and designating the condition of treatment to be the tenth of thirteen specified conditions).

### A.    The Safety of the Community

The government cannot carry its burden of proving by clear and convincing evidence that placing Mr. Porter in Gateway's inpatient treatment program would not reasonably assure the safety of the community. The Seventh Circuit has emphasized that "[a] defendant cannot be detained as dangerous . . . unless a finding is made that no release conditions '*will* reasonably assure . . . the safety of the community.'" *United States v. Dominguez*, 783 F.2d 702, 706-07 (7th Cir. 1986) (emphasis in original).[1] The Seventh Circuit has held that "[t]his finding cannot be based on evidence that [the defendant] has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." Id. at 707.

Mr. Porter's past conduct at Gateway and Thresholds suggests just the opposite, specifically, that it is not likely that he will engage in future misconduct while in a structured treatment setting. Ms. Seaton of Gateway reports that Mr. Porter was "a cooperative, easy guy" who "got along well with others" and "engaged in therapy well." She called him "really a decent

---

[1] It should be noted that *Dominguez* was a presumption case, and therefore the release standard in *Dominguez* was far more stringent than the release standard that applies to cases such as this one, in which the presumption of detention in 3142(e) does not apply.

guy; very respectful and cooperative," and said he was "one of our more pleasant clients." Given her experience with him, she does not believe he will pose a danger to the community while at Gateway. Mr. Harding of Thresholds echoed Ms. Seaton's comments. Having worked closely with Mr. Porter for over a year, Mr. Harding explains that he "never saw [Mr. Porter] act dangerous at all." He calls Mr. Porter "a good person" who is "motivated to do good things." He says that Mr. Porter does well with treatment and structure.

The circumstances of this case do not demonstrate by clear and convincing evidence that placement at Gateway will not reasonably assure the safety of the community. According to the government, Mr. Porter admitted during the offense that he was drunk. (He was apparently so drunk that he could not communicate with the agents after the arrest.) Mr. Porter remained completely sober during his last stay at Gateway, a good indication that Gateway can successfully treat the problem that appears to lie at the heart of the alleged offense. According to Ms. Seaton and Mr. Harding, Mr. Porter is not a remotely dangerous person when he is sober and taking his medications.

**B.    Appearance in Court**

The government also has not carried its burden of proving that placing Mr. Porter in Gateway's inpatient treatment program would not reasonably assure his appearance in court. The government contends that Mr. Porter might walk away from Gateway, but has neither presented any evidence that defendants on bond regularly walk away from treatment, nor any evidence that Mr. Porter himself has ever left a treatment program. In fact, Pretrial Services' 2007 Annual Report states that only 1.2% of the defendants released on bond last year absconded. Ms. Seaton of Gateway reports that she cannot recall anyone on bond, parole, or probation leaving Gateway in the last year. In addition, Ms. Seaton states that Gateway transports clients who are on bond to and from court.

There is every indication that Mr. Porter is someone who can comply with rules and laws when he is in a structured setting in which his mental illness is being properly treated, and as

Judge Nolan determined, Mr. Porter has nowhere to go. Mr. Porter successfully completed his year-long parole term during the time that he was living at Thresholds in 2006 and 2007. Moreover, Ms. Seaton and Mr. Harding both report that Mr. Porter enjoyed receiving treatment in a structured setting, and neither is concerned that Mr. Porter would leave treatment.

WHEREFORE, Paul Porter respectfully requests that this Court exercise its discretion to uphold the release order issued by Judge Nolan.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By: s/ Alison Siegler
    Alison Siegler

ALISON SIEGLER
FEDERAL DEFENDER PROGRAM
55 East Monroe Street
Room 2800
Chicago, IL 60603
(312) 621-8350